MARCUS WITTENBERG ET AL. V. JOHN T. MOLLYNEAUX.

FILED JUNE 9, 1898.   No. 8553.

1. **Evidence:** BUSINESS OF HOTEL: REGISTERS. Hotel registers, without proof that the names thereon are true entries of the guests of the hotel that they were paying guests, or the duration of their visits, are inadmissible to prove the extent of business of such hotel.

2. **Deed:** COVENANT AGAINST USING PREMISES FOR HOTEL PURPOSES: WAIVER: DAMAGES. A deed conveyed land with the covenant by the grantees that the premises conveyed should not for two years be used for hotel purposes. Afterwards the grantor in

writing waived the covenant, the waiver containing the follow-
ing: "Provided the maximum rate of said hotel shall be $1 per
day, and provided a greater sum is charged this agreement shall
be null and void, and the clause in said deed shall be binding on
the owners of the above described property." This was made at
a time when the grantees were contemplating a sale to a stran-
ger for hotel purposes. *Held,* That the condition in the waiver
was not merely intended to charge the second grantee, but that
on a violation of the agreement as to the rate at which the hotel
might be conducted the original grantees became liable on their
covenant.

3. **Breach of Contract: Gains Prevented: Evidence.** A party injured
by breach of contract may recover for gains prevented, provided
they are within the established rules permitting consequential
damages, and provided they can be proved to a reasonable degree
of certainty.

4. ———: **Damages: Evidence.** Evidence set forth in the opinion *held*
to leave the damages too uncertain to be allowed.

Error from the district court of Clay county. Tried
below before Hastings, J. *Reversed.*

*G. W. Bemis, Leslie G. Hurd,* and *M. C. King,* for plain-
tiffs in error.

*E. E. Hairgrove, Thomas Ryan,* and *Thomas H. Matters,*
*contra.*

Irvine, C.

The plaintiffs in error were at one time owners of cer-
tain property in Sutton adapted to use as a hotel. The
defendant in error, or his wife, owned hotel property in
another part of the town. An exchange was effected
whereby the hotel property of plaintiffs in error was con-
veyed to Mrs. Mollyneaux and that of Mollyneaux con-
veyed to plaintiffs in error. The deed conveying the
latter contained the following: "The same not to be used
for hotel purposes for two years from this date," the deed
being dated June 11, 1889. Mollyneaux sued, alleging
that he had continuously from the transfer operated a
hotel in the property conveyed to his wife, and that the
plaintiffs in error, the defendants below, had in Septem-

ber, 1889, in violation of their covenant, sold the other property for use as a hotel, and that it had been so conducted to plaintiff's damage. The answer, among other things, pleaded that defendants, at plaintiff's, solicitation, had sold their property for use as a hotel, to prevent the threatened construction of another hotel in the town, and, to that end, that the plaintiff and his wife had given a written waiver, set out as an exhibit, which closes as follows: "Provided the maximum rate of said hotel shall be $1 per day, and provided a greater sum is charged this agreement shall be null and void, and the clause in said deed shall be binding on the owners of the above described property." The reply pleaded that the hotel had, in violation of the terms of the waiver, been conducted at the rate of $2 per day, and that the waiver was thereby avoided. From a judgment for the defendants on these pleadings error was prosecuted to this court, where the judgment was reversed and the cause remanded. (*Mollyneaux v. Wittenberg*, 39 Neb. 547.) It was then held that the covenant in the deed was not unlawful or contrary to public policy as being an unreasonable restraint of trade; and further, that the reply was not a departure from the cause of action stated in the petition. As to the damages claimed it was said that it was very doubtful whether any evidence could be received, because it was not apparent how it could be shown to what extent custom had been diverted and what profits had been lost. But it was held that this question could not arise on the pleadings if a cause of action was stated for even nominal damages, thus in effect approving the dissenting opinion of Judge MASON in *French v. Ramge*, 2 Neb. 254. When the case was reinstated in the district court the answer was amended in such a way that it put in issue the liability of the defendants on the theory that the waiver was as to them absolute, and that the provision annulling it, if more than $1 per day should be charged guests at the hotel, applied only to such person as should become the owner by purchase from the defendants. The cause was

then tried, and a verdict was returned for the plaintiff for
$1,400. To reverse a judgment entered thereon the defendants bring the case here.

On the trial the plaintiff called as witnesses certain
persons who had been employed as clerks at the hotel,
which was operated by one Shope, who had purchased
from the defendants. They identified certain books as
registers, kept during their respective periods of service,
wherein guests entered their names on arriving. The
only entries made by the witnesses were such letters as
"D" and "L," indicating the time of arrivals. The books
did not show how long the subscribing guests remained
at the hotel, and there was no proof whatever that the
names therein written were true entries of *bona fide*
guests. They were admitted in evidence over the objection of defendants, and we think their admission was
erroneous. They proved, on the foundation laid, simply
that certain persons had, at certain times, signed their
names on the books. They afforded no proof of the real
number of actual guests, that the persons were paying
customers or the duration of their stay, and so of the
extent of patronage the Shope hotel enjoyed. The error
was accentuated by refusing to permit the defendants
to cross-examine on these points. It must be borne in
mind that this action is against plaintiff's immediate
grantees, not for operating themselves the hotel, but for
selling to another and permitting him to operate it. The
books were not kept or controlled in any way by the defendants, but were books of a stranger, which might,
under proper circumstances and on proper preliminary
proof, perhaps, be admitted as entries made in the course
of business, or which might be used to refresh the memory of a witness, but which could not, without a foundation and supplementary evidence, which were not here
admitted, be used to prove the issue in this case.

As the case must be retried it is proper that we should
now consider certain other questions which will inevitably again arise. It is insisted that the operating of the

hotel at the rate of $2 per day avoided the waiver only as against Shope, but that the waiver as to defendants was absolute. We do not so construe the contract. The language of the clause in question, already quoted, is that if a greater sum than $1 be charged "this agreement [the waiver] shall be null and void." Then follows a further provision that in such case the restrictive covenant in the original deed should be binding on the owners. In our opinion, this language means that if more than $1 a day should be charged, then the waiver should not be effective for any purpose; and further, that the obligations of the covenant should in that event run with the land and charge the then owners as well as the immediate grantees of plaintiff. Even if the waiver be in that respect ambiguous, the same construction would be required, because in the original answer no such defense was pleaded, nor was it suggested when the case was here before. It is evident that the parties themselves have, until the filing of the amended answer, several years after the cause of action arose, treated the agreement in the light indicated. Such construction should, in case of doubt, be adopted. (*School District v. Estes*, 13 Neb. 52; *Rathbun v. McConnell*, 27 Neb. 239; *Paxton v. Smith*, 41 Neb. 56; *Davis v. Ravenna Creamery Co.*, 48 Neb. 471.)

The rule of damages is much discussed, and it is argued that only nominal damages could in such case be recovered. It is said that there can be no recovery for profits prevented. The former opinion voiced the difficulty of proof in such cases, but did not hold that substantial damages could not, as a matter of law, be recovered in such case. A doubt was expressed as to the practicability of proving them. In *French v. Ramge*, 2 Neb. 254, it was not held that recovery could never be had for a loss of profits, but that the circumstances of that case forbade proof to that degree of certainty which the law requires. It has since been held that the party injured by a breach of contract is entitled to recover for

32

gains prevented as well as for losses sustained, provided they are certain and such as might naturally be expected to follow the breach. (*Western Union Telegraph Co. v. Wilhelm*, 48 Neb. 910.) Indeed the former opinion in this case impliedly recognizes such rule: There was not made, however, proof to the requisite degree of certainty, although plaintiff almost succeeded in that effort. It was made to appear that prior to the opening of Shope's hotel plaintiff's was the only hotel in town. The extent of his receipts was shown. It was then shown that the amount of business did not change. This was by proving that the number of travelers entering the town, and other conditions, remained practically the same. Then the receipts of the plaintiff's hotel, after the opening of Shope's, were shown, and there was evidence in addition that the receipts of the two hotels were about the same as plaintiff's receipts had been. But one important element was lacking. There was no proof as to expenses under the first condition. We may surmise that in such a business certain elements of expense remain constant, but that others must vary according to the volume of business. It is said in the briefs that it was shown that the expense remained the same, but counsel certainly mistake the record. The only evidence relating to expenses is found in plaintiff's testimony, where, in answer to a question as to how his "trade ran" after Shope had opened the other hotel, he said: "My trade ran about even with my expenses, about $11 a day. It just took all I could get to make my expenses." This tends to prove that, after Shope opened, plaintiff's business was not profitable, but for all that appears his expenses before his business was reduced were so much greater than afterwards that the same condition then existed. In the absence of evidence on that point proof of receipts alone would fail to establish the loss of profits to any degree of certainty.

REVERSED AND REMANDED.

RYAN, C., not sitting.